In re Dennis J. Murphy

[443 A.2d 450]

No. 273-80

Present: Barney, C.J., Billings, Hill and Underwood, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed February 2, 1982

*Putter and Unger,* and *Michael R. Zimmerman,* Montpelier, for Petitioner.

*John J. Easton, Jr.,* Attorney General, *Louis P. Peck,* Chief Assistant Attorney General, and *Scott Cameron,* Assistant Attorney General, Montpelier, for Respondent.

**Barney, C.J.** The grievant has brought here the decision of the Labor Board rejecting his grievance and affirming his dismissal from his position at the Waterbury State Hospital. He challenges the decision for failing to address the issues raised by the evidence as presented.

The facts are important. The grievant had been employed for a number of years at the state hospital as a psychiatric technician, pay scale 6, when he suffered a disabling knee injury. Recovery was slow, ending with what was determined to be a permanent partial disability.

The injury came about as the grievant was attempting to subdue a newly admitted disturbed patient. The same knee had been injured in a similar situation a few months before, but with no permanent harm. Occasions for such injury were more prevalent on the ward for new admissions, where grievant was assigned, than in other parts of the hospital.

When grievant returned to work after more than seven months of leave of absence for recuperative purposes, it was understood that he was not medically cleared for ward duty. Since his leave time expired April 1, 1979, and further extension was denied, though requested, the grievant was directed to report for duty on April 2. At that time he was assigned to work on what is known at the state hospital as "the panel."

The "panel" involves sedentary work in a closed room which functions as a sort of monitoring station and control room for access to the wards. There is no formal job description for this work, but rather it is reserved for persons who, by reason of some temporary condition, physical or otherwise, are prevented from performing their normal assignments. Grievant worked here until December of 1979.

In the meantime, he had been awarded disability compensation for his injury under state employee benefit procedures providing for workmen's compensation awards. 21 V.S.A. § 601 et seq. In late April, 1979, his orthopedic surgeon reported that grievant's knee had healed as much as it was going to and indicated that although light or medium duty was probably all right, the risk of reinjury was too great to allow his working where there was a possibility of altercation or a need to defend himself.

The grievant indicated he would like permanent assignment to the "panel." He did continue there until December, 1979, but this was in the face of a policy decision by the hospital administration that the "panel" position must remain available for its previous temporary use and not become a permanent position.

During August there was an attempt by the hospital personnel office to transfer grievant from his present position to a clerk's position at no loss in pay. He was agreeable to this, but an audit of the position by the state personnel department reclassified the clerk job at pay scale 2, meaning a pay reduction. He then declined to accept it.

No other position changes at the hospital were considered for the grievant, nor were any positions in state service outside the hospital offered. In December he was directed to report for duty and resume work at his former job on the ward.

The grievant wrote to the superintendent asking to remain on the panel or be demoted to the position of psychiatric technician at pay scale 4. He stated that, due to his injury, it would be bad for staff and patient relationships for him to try to function where he himself would not do all that he might be asking other staff to do. Receiving no response to this letter he reported for work. When he found himself assigned to the ward in his old capacity, he signed out and left the hospital. The Labor Board found that he did so because he feared for his safety.

This happened on several successive days. The superintendent then wrote grievant suggesting that he had the option of doing the work of his position, or resigning. The grievant's response was to state that he would not resign. He continued to report for work and sign out, until finally he was sent a letter of dismissal by the superintendent. Referencing the occasions of his reporting for duty, then signing out, it stated that he was dismissed for gross neglect of duty, refusal to obey a lawful and reasonable order given by a supervisor, and gross misconduct. The disciplinary provisions of the state employee's contract provide for immediate dismissal on either of the first two stated grounds alone. Agreement between the State of Vermont and the Vermont State Employees' Association, Non-

Management Unit, July 1, 1979, to June 30, 1981, Article XV, Sections 3(a) and (b).

■ The Board, in reaching its decision, did not find that the grievant had neglected his duty or had refused to obey a lawful and reasonable order given by a supervisor, or had been guilty of gross misconduct within the terms of the employment contract. Instead, the Board flatly stated that the grievant was physically unable to do his job, and professed inability to fashion a remedy beyond his disability compensation. This left the dismissal without supporting just cause and yet it affirmed the dismissal action of the State.

This decision clearly fails to differentiate between a dismissal for misconduct and a termination based on physical inability to perform assigned duties. The difference in consequences is significant, and important to an employee both financially and as a part of his employment history.

■ In this case the grievant was seeking to contest his dismissal for disciplinary reasons. This was the issue which the Labor Board was duty bound to address. From the findings and conclusions it is clear that the Board's action in dismissing the grievance is unsupported by its own findings and inconsistent with its conclusions. The matter must be returned for reconsideration of the issue raised by the grievance, which is not the right of the State to terminate the grievant's employment under the contract, but the right to dismiss him on disciplinary grounds.

*Reversed and remanded for further proceedings not inconsistent with the views expressed in the opinion.*